UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**SCOTT CARSWELL** and **JULIE CARSWELL,**
**Husband** and **Wife, KENT MCCOY** and
**JANNINE MCCOY,** Husband and Wife,
and **ROBERT HOWARD** individually,
Individually and as Representatives of
similarly situated persons,

       **Plaintiffs,**

v.                                          **Case No. 4:10-CV-00486**

**LISA ECHEVERRI,** as Executive
Director of the Florida Department of
Revenue, acting in her official capacity, and
**BP, plc; BP PRODUCTS NORTH**
**AMERICA, INC.; BP AMERICA, INC.;**
**BP EXPLORATION AND PRODUCTION,**
**INC.; BP AMERICAN PRODUCTION**
**COMPANY; TRANSOCEAN, LTD.;**
**et al,**

       **Defendants.**

_____/

## PLAINTIFFS' MOTION TO REMAND

Plaintiffs, by and through their undersigned counsel and pursuant to 28 U.S.C. §1447(c),

file this motion to remand directed to the original and amended notice of removal filed by

defendants, Transocean Deepwater, Inc., Transocean Holdings LLC, and Triton Asset Leasing

GMBH (hereafter referred to as the Transocean defendants) and in support hereof would show:

    1.    Plaintiffs' request for declaratory relief as framed in their first amended complaint

does not present a case or controversy as to the existence of liability of the Transocean

defendants for damages under state or federal law.  As such, the defendants are wrong in saying Plaintiffs' action presents a matter of federal question jurisdiction.

2.      Under application of the "well-pleaded complaint rule" adhered to in this Circuit, nothing featured in the declaratory request sought in this case suggests that plaintiffs seek relief availed by the Oil Pollution Act ("OPA") or the Outer Continental Shelf Land Act ("OCSLA").

3.      Neither OPA or OCSLA operates to effect "complete preemption" that would to generate federal question jurisdiction as a recognized exception to the "well-pleaded complaint rule."  In fact, a proper inspection and analysis of these two federal acts reveals the following:

a.      Congressional enactment of OPA in 1990 was not intended to preempt Florida's statutory relief conferred for damages caused by the pollution of state territorial waters set out in Chapter 376, Florida Statutes.  To the contrary, the two "saving clauses" in OPA's Title I – 33 U.S.C. §12718(a)(1)(c), -- "expressly preserve state authority to impose additional liability requirements and penalties."  *U. S. v. Massachusetts,* 493 F.3d 1, 6 (1st Cir. 2007).  OPA's non-preemption of state remedies was settled in *U.S. v. Locke,* 529 U.S. 89, 105 (2000).

b.      Federal jurisdiction under  OCSLA does not operate to displace or preempt causes of action arising or existing under territorial reach of state laws.  A claim under Chapter 376, Laws of Florida, is not therefore preempted by the narrow and limited scope of exclusive jurisdictional of OCSLA's reach under 43 U.S.C. §1349(a).

4.      The defendants have failed to meet their burden of demonstrating that the "matter in controversy" in this action satisfies the $5,000,000 jurisdictional requirement contained in 28 U.S.C. §1332(d)(2).

2

5.  ·    Because defendants lack an objectively reasonable basis to support removal of this cause this court should exercise its discretion to award plaintiffs attorney's fees and costs pursuant to 28 U.S.C. §1447(c).

6.        Pursuant to Local Rule 7.1(B), counsel for plaintiffs have conferred in good faith with counsel for defendants to resolve by agreement the issues underlying the request for relief contained in this motion, but such efforts were unsuccessful.

WHEREFORE, plaintiffs request that the Court grant their motion and remand this cause to the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, and assess attorney's fees and costs against the defendants pursuant to 28 U.S.C. §1447(c).

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

### A.  Introduction

The Transocean defendants filed a notice of removal (Doc. 1) on November 1, 2010, and an amended notice of removal (Doc. 10) on November 10, 2010.  The original removal notice is based on the contention that this court has subject matter jurisdiction under the requirements of the Class Action Fairness Act (CAFA), particularly 28 U.S.C. §1332(d).  The amended removal notice incorporated by reference the basis for removal set out in the original removal notice; it also contended that the claims raised by plaintiffs in their amended complaint present federal questions and are therefore removable pursuant to 28 U.S.C. §1441.  This Memorandum will address the grounds for removal raised by the Transocean defendants in both of their removal pleadings.  Additionally, attorneys for the Florida Department of Revenue have authorized the undersigned to represent to the court that the Department will be filing a motion to remand based on the Eleventh Amendment and other grounds.

3

**B. No Case Or Controversy Presented As A Basis For Damages.**

The Transocean defendants mischaracterize the relief sought by the putative plaintiff subclasses in their first amended complaint. This mischaracterization is evidenced by the following representations, which purportedly refer to plaintiffs' originally filed complaint - - not their first amended complaint, which is the complaint at issue in this cause:

> 3. The originally filed Complaint asserts damage claims for diminution in value of Plaintiff's real estate due to an oil spill, damage claims addressed by OPA. (Complaint at ¶¶ 41-46). The Complaint seeks recovery of damages caused by an "oil spill" resulting in "environmental and economic devastation." (Complaint at ¶¶ 1, 3, 6, 7, 8, 41, 94, 99, 101, 103, 112, 113, 114, 118, 119, 120, 121, 127-128, 135-135, 140-41). These damages fall squarely within the types of damages that Congress intended to be recoverable exclusively under OPA, and therefore, Plaintiff's claims arise under the Act.

(Doc. 10, p. 3); (Emphasis added).

The defendants are wrong. Nothing in plaintiffs' first amended complaint frames a pending cause of action for damages to plaintiffs subclasses' properties or asserts claims for economic damages associated with the diminution in the ad valorem tax value of such properties. The putative class action plaintiffs in this cause seek only declaratory relief under Florida law: a declaration that, as to the affected counties, oil pollution resulting from the subject BP oil spill proximately caused and resulted in the diminution of the just value of taxable real properties located proximately to the Gulf of Mexico and/or affiliated navigable state waters for tax year 2011 and indeterminate subsequent tax years.

Plaintiffs' relief is requested pursuant to §86.011, Fla. Stat. (2010), which provides:

**86.011 Jurisdiction of trial court. —**

The circuit and county courts have jurisdiction within their respective jurisdictional amounts to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed. No action or procedure is open to objection on the ground that a declaratory judgment is demanded. The court's declaration may be either affirmative or negative in form

and effect and such declaration has the force and effect of a final judgment. The court may render declaratory judgments on the existence, or nonexistence:

(1) Of any immunity, power, privilege, or right; or

(2) Of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future. Any person seeking a declaratory judgment may also demand additional, alternative, coercive, subsequent, or supplemental relief in the same action.

(Emphasis added).

The factual issue sought to be declared in this litigation is what method should be used to determine the share of the diminutions in just value to assessed property values for tax year 2011 and subsequent years is reasonably attributable to oil pollution resulting from the BP oil spill versus general economic conditions. The limited nature of the declaratory relief sought in this litigation is made clear in the Introduction to the first amended complaint.  (Doc. 1, p. 9, ¶ 1). Depending on the outcome of this inquiry and declaration, the amended complaint reserves the right of any putative plaintiff subclass to seek supplemental relief against the defendants for any monetary damages occasioned by the allocation or redistribution of ad valorem taxes for the just valuation diminutions resulting from the subject oil pollution.  Such damage awards, however, are to be considered only in future legal proceedings.

For example, if the taxing authorities elect to totally absorb the diminutions in value caused by the oil spill, the property owner subclasses will have no action for monetary relief. Thus, the decision is entirely with the taxing authorities, which may elect to absorb the loss and seek to recover any tax shortfall with a damage action brought directly against the polluting firms.

Of course, if the taxing authorities elect instead to redistribute all or a portion of the tax revenue shortfall and place the resulting economic burden on plaintiffs, here would be claims for

damages.  This cannot happen any earlier than November of 2011, when tax assessments are issued.

Therefore, the claims asserted by plaintiffs are not, at this state, monetary claims but solely claims for declaratory relief under Florida Statutes based on principles governing Florida ad valorem tax law.

The Transocean defendants ignore the amended pleading by repeated reference to allegations purportedly contained in the original complaint - - a complaint which was never served. Defendants expressly reference allegations in the original complaint as significant signposts signaling the extent and nature of relief sought in the amended complaint.  The court is constrained to deal with the case before it and no other case.  The court must ignore defendants' effort to misdirect the court's scrutiny to a case not before it.[1]

## C. Federal Question Jurisdiction Is A High Bar.

Defendants must concede that no federal question jurisdiction is generated by subclass one plaintiffs (property owners in close proximity to coastal areas of the affected counties) requesting declaratory relief as to what portion or percentage of any diminution in the just value of their properties, if any, is attributable to the stigmatic consequences of pollution caused by the BP oil spill rather than general economic conditions.  Defendants should likewise concede that, until a definitive percentage or portion of such diminution is determined and adjudicated, and until it is evident from the assessment of 2011 ad valorem taxes that one or more of the plaintiff subclasses is adversely affected by the redistribution of a shortfall in tax revenues associated

---

[1] As noted in the above-quoted segment of the amended removal notice, defendants reference numerous paragraphs of the original complaint which do not appear in the amended complaint. This distortion is repeated in paragraph 9 of defendants' amended notice.  The original complaint contained only 58 numbered paragraphs.  Thus, the allegations referenced in the above-quoted segment beyond paragraph 58 are totally foreign to the original complaint and therefore are not in any respect identifiable as a part of the instant action.

with such diminution, no actionable economic damage claim can accrue against the defendants. Thus, there is no present basis for a federal claim relating to economic consequences or relating to the redistribution of ad valorem assessments for 2011 taxes.  In other words, no case or controversy presently exists regarding the legal fault of defendants for the diminutions in property values.  Thus, the federal question removal sought by the Transocean defendants is fundamentally flawed and improper.

Aside from the absence of a "case or controversy" necessary to generate a state or federal claim for damages, the decision in *Stern v. International Business Machines Corp,* 326 F.3d 1367 (11th Cir. 2003), succinctly frames the limitations of federal question removal under 28 U.S.C. §1441.  The Court noted:

> . . . In "federal question" cases such as the one at bar, the "well-pleaded complaint rule" holds that a federal defense to a state law claim generally is insufficient to satisfy the requirements of 28 U.S.C. §1331. Instead, the federal question must "necessarily appear in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." (Citations omitted). As we have said in *Whitt v. Sherman Int'l Corp.,* "a case does not arise under federal law unless a federal question is presented on the face of the plaintiff's complaint." 147 F.3d 1325, 1329 (11th Cir. 1998) (citing *Kemp v. Int'l Bus. Machs. Corp.,* 109 F.3d 708, 712, (11th Cir. 1997)).

> As binding as the "well-pleaded complaint rule" is, however, it permits an extremely narrow exception in cases implicating the doctrine of complete preemption. As we recently explained in *Geddes v. Am. Airlines, Inc.:*

>> . . . Complete preemption, on the other hand, is a doctrine distinct from ordinary preemption.  Rather than constituting a defense, it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims.  It looks beyond the complaint to determine if the suit is, in reality, purely a creature of federal law, even if state law would provide a cause of action in the absence of the federal law, thus creating the federal question jurisdiction requisite to removal to federal courts.

> 321 F.3d 1349, 1352-53 (11th Cir. 2003) (internal punctuation and citations omitted);

7

*Id.* at 1370-71 (Emphasis added, some internal citations omitted).

*Stern* tracked the removal doctrine announced by the United States Supreme Court in

*Caterpillar v. Williams,* 482 U.S. 386 (1987):

> Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. See *Gully* v. *First National Bank,* 299 U.S. 109, 112-113 (1936). The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

* * *

> There does exist, however, an "independent corollary" to the well-pleaded complaint rule, *id.*, at 22, known as the "complete pre-emption" doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance Co., supra*, at 65. Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Id.* at 393-393 (emphasis added).

Beyond the confines of the "well-pleaded complaint rule," and the exception for "complete diversity," defendant attempting to remove bears a heavy burden of establishing federal jurisdiction. The federalism doctrine states that federal courts are courts of limited jurisdiction and should not interfere with cases brought in state court because that deprives a state court of its constitutional right to determine controversies in the states own courts. See *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1330 (11th Cir. 2006); *Klempner v. Nw. Mut. Life Ins. Co.*, 196 F. Supp. 1233, 1237 (S.D. Fla. 2001). Removal is a statutory right and "should be construed strictly in favor of state court jurisdiction."

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); *see also U. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *Perez*, 139 F.3d at 1373. Thus a federal court shall construe the removal statutes narrowly, resolving any uncertainties in favor of remand. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

## D. <u>Neither OPA or OCSLA Operates To Preempt State Law Claims.</u>

### 1. **Defendants' Suggestion That OPA Is Preemptive Of State Laws Is Erroneous.**

Even if this court concludes that the plaintiffs' simple declaratory judgment request somehow entails a "case or controversy" encompassing a claim for the award of monetary damages, the defendants are wrong in stating that OPA preempts state law claims. In paragraph 2 of their amended notice of removal, the defendants state, "OPA displaces claims pleaded by Plaintiff [sic] that seek recovery of damages that are recoverable exclusively under OPA." (Doc. 10, p. 2). By the term "displaces," defendants apparently mean "preempts." Yet nothing in any authority cited by the defendants holds that state statutory damage claims for oil pollution of state waters are preempted by OPA.

Florida has provided causes of action against responsible parties for damages resulting from oil pollution of state waters. The remedial scope of Chapter 376, Laws of Florida, was amplified by the Florida Supreme Court in *Curd v. Mosaic Fertilizer, LLC.*, 39 So.3d 1216 (2010). Yet defendants suggest that remedies of Chapter 376 are illusory because they are preempted by OPA. Defendants' contention must be rejected.

In *U. S. v. Locke*, 529 U.S. 89 (2000), the United States Supreme Court traced OPA's history and noted the intent and effect of the two savings clauses contained in Title 1:

> The saving clauses are found in Title I of OPA, captioned Oil Pollution Liability and Compensation and creating a liability scheme for oil pollution. In contrast to the Washington rules at issue here, Title I does not regulate vessel operation, design, or manning. Placement of the saving clauses in Title I of

9

OPA suggests that <u>Congress intended to preserve state laws</u> of a scope similar to the matters contained in Title I of OPA, not all state laws similar to the matters covered by the whole of OPA or to the whole subject of maritime oil transport. <u>The evident purpose of the saving clauses is to preserve state laws which, rather than imposing substantive regulation of a vessel's primary conduct, establish liability rules and financial requirements relating to oil spills.</u> See *Gutierrez* v. *Ada*, 528 U.S. 250, 255 (2000) (words of a statute should be interpreted consistent with their neighbors to avoid giving unintended breadth to an Act of Congress).

Our conclusion is fortified by Congress' decision to limit the saving clauses by the same key words it used in declaring the scope of Title I of OPA. Title I of OPA permits recovery of damages involving vessels "from which oil is discharged, or which pos[e] the substantial threat of a discharge of oil." 33 U.S.C. §2702(a). <u>The saving clauses, in parallel manner, permit States to impose liability or requirements "relating to the discharge, or substantial threat of a discharge, of oil." § 2718(c).</u>

* * *

Limiting the saving clauses as we have determined respects the established federal-state balance in matters of maritime commerce between the subjects as to which the States retain concurrent powers and those over which the federal authority displaces state control. <u>We have upheld state laws imposing liability for pollution caused by oil spills.</u> See *Askew* v. *Am. Waterways Operators, Inc.*, 411 U.S., at 325. <u>Our view of OPA's saving clauses preserves this important role for the States, which is unchallenged here.</u>

*Id.* at 105-106 (emphasis added).

By failing even to address the declared legal effect of the two savings clauses thus interpreted in *Locke,* the defendants erroneously ask this court to conclude that OPA preempts any state law claim for damages occasioned by the oil pollution of state coastal waters. It does not.

### 2. OCSLA Likewise Does Not Preempt Damage Claims Grounded On the Remedial Provisions Of Chapter 376, Laws Of Florida.

Defendants' argument that the declaratory relief sought in the first amended complaint somehow presents a "case or controversy" under OCSLA is misplaced. Defendants maintain that the Act confers exclusive federal question jurisdiction as a basis for removal to this court,

10

and that the broad powers of OCSLA conferred in 43 U.S.C. §1349(1) displace or preempt

causes of action arising under Chapter 376, Laws of Florida.

Defendants' own cases do not support the argument that OCSLA is exclusive. In *Tennessee*

*Gas Pipeline v. Houston Casualty Insurance Co., Inc.,* 87 F.3d 150 (5th Cir. 1996), while

assigning a broad construction to OCSLA, the court made it clear that the Act was not intended

to displace or preempt laws - - including state laws - - encompassed by the savings clause in 43

U.S.C. §1333(f):[2]

> While OCSLA was intended to apply to the full range of disputes that might
> occur on the OCS, it was not intended to displace general maritime law. This
> is clear from both the statute itself and holdings of this court. According to the
> statute, "this subchapter shall be construed in such a manner that the character
> of the waters above the outer Continental Shelf as high seas and the right to
> navigation and fishing therein shall not be affected." Furthermore, 43 U.S.C.
> §(s) 1333(f) makes clear that the applicability of OCSLA law under 43 U.S.C.
> §1333(a) shall not give rise to any inference that other provisions of law (such
> as general maritime law), do not also apply. It is not surprising, therefore, that
> this court has declared that where OCSLA and general maritime law both
> could apply, the case is to be governed by maritime law.

*Id.* at 154 (emphasis added).

In *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473 (1981), the Court clearly declared

that OCSLA did not displace or preempt the choice of jurisdiction conferred by Congress on a

plaintiff under the facts and circumstances such as those found in the instant case.

> No one argues that Congress explicitly granted federal courts exclusive
> jurisdiction over cases arising under OCSLA. Congress did grant United
> States district courts "original jurisdiction of cases and controversies arising
> out of or

---

[2] The scope of the savings clause is defined by 43 U.S.C. §1333(a): "(a) Constitution and United States laws; laws of adjacent States; publication of projected State lines; international boundary disputes; restriction on State taxation and jurisdiction." Clearly, laws derivative of subsection (a)'s origin or foundation are not preempted by OCSLA. Here, Chapter 376, Laws of Florida, qualifies for this savings provision.

11

> in connection with any operations conducted on the outer Continental Shelf . . .
> ." 43 U.S.C. §1333(b). <u>It is black letter law, however, that the mere grant of
> jurisdiction to a federal court does not operate to oust a state court from
> concurrent jurisdiction over the cause of action.</u> *United States* v. *Bank of New
> *York & Trust Co.,* 296 U.S. 463, 479 (1936).

*Id.* at 479; (Emphasis added). *Gulf Offshore* has been followed and clarified in subsequent

decisions, including *Hathorn v. Loram,* 457 U.S. 255 (1982) and *Taffin v. Levitt,* 493 U.S. 455

(1990) (all recognizing that absent an explicit statutory directive [or other factors not here

involved], a presumption of concurrent jurisdiction by a state court cannot be rebutted).

   *Gulf Offshore's* holding shall come as no surprise because in *Askew v. American*

*Waterways Operators, Inc.,* 411 U.S. 325 (1973), the Court expressly dismissed the notion that

Florida's power and authority to enact Chapter 376, Laws of Florida, was preempted by the

existence of the federal maritime domain which had recently been embellished by the Water

Quality Improvement Act of 1970, 33 U.S.C. §1161, et seq.:

> . . . The District Court held that the Florida Act is an unconstitutional intrusion
> into the federal maritime domain. It declared the Florida Act null and void and
> enjoined its enforcement. . . .
>
>    The case is here on direct appeal. We reverse. <u>We find no constitutional or
> statutory impediment to permitting Florida, in the present setting of this case,
> to establish any "requirement or liability" concerning the impact of oil
> spillages on Florida's interests or concerns.</u> To rule as the District Court has
> done is to allow federal admiralty jurisdiction to swallow most of the police
> power of the States over oil spillage — an insidious form of pollution of vast
> concern to every coastal city or port and to all the estuaries on which the life of
> the ocean and the lives of the coastal people are greatly dependent.

*Id.* at 328-329 (emphasis added).

   Finally, even if the defendants are correct in maintaining that OPA and OCSLA preempt

state law claims – a position which totally ignores prevailing pronouncements governing the law

applicable in this court – the issue of preemption raises a defense which does not appear on the

face of the amended complaint and therefore does not create removal jurisdiction. *Stearns,*

*supra; Kemp v. IBM Corp.* 109 F.3d 708, 712 (11th Cir. 1997).

### E. Procedure For Removal Under CAFA

Defendants also predicate removal in this case on provisions of the Class Action Fairness

(CAFA), 28 U.S.C. §1332(d):

> (d) (1) In this subsection —
>
> (A) the term "class" means all of the class members in a class action;
>
>            * * *
>
> (2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which —
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;

The application of this provision to class action matters is amply addressed in decisions

of the Eleventh Circuit. The procedural tasks confronted by a defendant seeking removal under

CAFA are summarized in *Lowery v. Alabama Power,* 483 F.3d 1184 (11th Cir. 2007):

> To decide this case, we must unravel some of the mysteries of CAFA's cryptic text. We must also consider existing principles of law governing removal generally — who bears the burden of establishing that removal is proper, how that party can satisfy its burden, and how a district court must proceed in evaluating its jurisdiction after removal.

*Id.* at 1187.

The *Lowery* court then proceeded with this pertinent analysis:

> Consistent with the limited nature of federal jurisdiction, the party seeking a federal venue must establish the venue's jurisdictional requirements. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Under this traditional rule, the defendants, having removed the case to the district court, would bear the burden of establishing the court's jurisdiction. The defendants contend, however, that this traditional

13

rule frustrates CAFA's motivating congressional purpose of expanded access to the federal courts. . . .

The uncertainty surrounding the burden of proof in CAFA cases arises not from the text of CAFA itself — which is silent on the matter — but from a few discrete excerpts of the statute's legislative history. The most cited passage, taken from the Senate Committee Report, states: "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident." S.Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.

Although several district courts have followed this apparent congressional intent in shifting the burden of proof onto the plaintiff, the courts of appeals have been reluctant to make the shift from such a "longstanding, near-canonical rule." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir.2006) . . . We have recently joined the Second, Third, Seventh, and Ninth Circuits in following the settled practice of placing the burden of proof on the removing defendant. *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir.2006) (citing decisions of the Seventh and Ninth Circuits in maintaining that the removing party bears the jurisdictional burden of proof); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir.2006) ("CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction.").

\* \* \*

Having established that CAFA does not shift the burden of proof in removal actions, we must still clarify what that burden is. For our purposes, therefore, we must identify the standard by which we measure the sufficiency of the defendants' showing that the plaintiffs' claims exceed $5,000,000 in aggregate.

The courts have held that, in the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence.

*Id.* at 1207-08 (emphasis added; some internal citations omitted).

## F. Governing Criteria For Determining The Monetary Value of Benefits Flowing From A Grant Of Declaratory Relief

Plaintiff subclasses seek only a declaratory judgment as to the methodology and basis for

ascertaining the diminution in  value of affected real properties caused by pollution resulting

from the BP oil spill rather than general economic conditions.  Because damages to the plaintiff

14

subclasses are unspecified – and cannot be quantified or specified until 2011 ad valorem tax levies are implemented next November – *Lowery* clearly establishes that the defendants have not met their burden of establishing the jurisdictional amount in controversy. The measure of damages from a drop in property values cannot be known or ascertainable until a shortfall in tax revenue is assessed and effectively redistributed by affected taxing entities to plaintiff subclasses. Thus, no measureable monetary benefit will follow to the plaintiffs simply because the requested declaratory relief is granted. Such monetary burdens or consequences, if any, must await the future assessments and decisions of the various taxing entities.

The defendants predicate their removal on the assertion that granting declaratory relief to any degree or extent will ultimately expose defendants to monetary damages in excess of an aggregate amount of $5 million. The position of the Eleventh Circuit, however, is that any value from the grant of declaratory relief must be ascertained from the perspective of the plaintiffs rather than the defendants. *Ericsson G.E. Mobile Comm. v. Motorola,* 120 F.3d 216, 218-220 (11th Cir. 1997).

> In our view . . . this circuit has adopted the plaintiff-viewpoint rule. Commentators and other courts likewise have read these cases as endorsing the plaintiff-viewpoint approach. See, e.g., McCarty v. Amoco Pipeline Co., 595 F.2d 389, 392 n. 3 (7th Cir. 1979) . . . 14A Charles A. Wright et al., Federal Practice and Procedure, Section(s) 3703 at 61 n. 1 . . . Moreover, the Fifth Circuit recently indicated that the plaintiff-viewpoint rule of . . . is still controlling. See Webb v. Investacorp, Inc., 89 F.3d 252, 257 n. 1 (5th Cir. 1996) (stating that because value to plaintiff and defendant was the same, calculation of amount in controversy did not violate plaintiff-viewpoint rule).

> \* \* \*

> Although we recognize that there are persuasive arguments to support the adoption of the either-viewpoint rule, as a panel of this court, we remain bound to follow the plaintiff-viewpoint rule regardless of the wisdom we may attach to it. Only an en banc decision of this court or an intervening decision of the Supreme Court can alter the controlling law of this circuit.

(Emphasis added and some internal citations omitted).

The *Ericsson* analysis was followed in *Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th

Cir. 2000), where the court observed:

> When a plaintiff seeks injunctive or declaratory relief, the amount in
> controversy is the monetary value of the object of the litigation from the
> plaintiff's perspective. . . . In other words, the value of the requested injunctive
> relief is the monetary value of the benefit that would flow to the plaintiff if the
> injunction were granted.   . . . However, we need not address whether the
> monetary value of the requested injunctive relief should be considered in the
> aggregate, or instead attributed *pro rata* among the class members, because we
> conclude that the monetary value of the injunctive relief to the class plaintiffs
> in this case is "too speculative and immeasurable" to establish the requisite
> amount in controversy in either event.
>
> We have little trouble concluding "to a legal certainty" that the value of the
> injunctive relief does not satisfy the jurisdictional amount in this case, . . .
> because we doubt that any monetary value at all would accrue to the class
> plaintiffs upon issuance of the prospective injunction.

*Id.* at 1077 (emphasis added and some internal citations omitted).

Applying the "legal certainty test" fashioned in *Ericsson,* the *Cohen* court noted:

> Consequently, the only benefit to Ericsson from its injunctive relief would
> have been the possibility that the city might rebid the contract and that, during
> the rebid, the city might select Ericsson's communications system and price. . .
> . We refused to pile possibility onto possibility to estimate the value of that
> benefit, but instead held that "[b]ecause [Ericsson could not] reduce the
> speculative benefit resulting from a rebid 'to a monetary standard, there [was]
> no pecuniary amount in controversy.'" *Id.* at 222.
>
> Similarly, the injunctive relief in this case involves too many contingencies,
> such as the manner in which Office Depot might alter its pricing schemes and
> the extent to which the class members' purchasing patterns might change.
> Because of these contingencies, any benefit to the class from the injunction
> cannot be reduced to a reasonable monetary estimate. *See id.* at 222. We
> therefore conclude that any monetary value to Cohen's class from the
> injunction is either non-existent, or at least too tenuous of a foundation for
> diversity jurisdiction. In reaching this conclusion, we also note that the policy
> underlying 28 U.S.C. §1332(a), which is to reserve federal court diversity
> jurisdiction for disputes involving relatively substantial damages, further
> informs our refusal to speculate about the value of a prospective injunction to
> the class plaintiffs in this case.

*Id.* at 1078-79 (some internal citations omitted).

In the present case as in *Ericsson* and *Cohen,* it is a legal certainty that no monetary relief will flow to the putative class plaintiffs simply because declaratory relief is granted. The measureable value of any benefits flowing to plaintiffs as a consequence of the requested declaration must await actions by the various taxing entities. Such actions cannot be bought until at least November 2011, when the tax assessments are made. Until then, there is no way to quantify the range of benefits, if any. Until such assessments are made, any monetary measure of benefits which may flow to plaintiff is sheerly speculative, which the courts have determined is impermissible.

Moreover, precedence holds that the burden of future tax assessments does not constitute an immediately experienced grievance which can be measured in money to satisfy the "matter in controversy" threshold. The poignant observation in *Vicksburg, S.& P. RY Co., v. Nattin,* 58 F.3d 979 (5th Cir. 1932) applies here:

> . . . To assume, as appellant asks the court to do, that there will be an assessment each year against the property sufficient to aggregate in the twenty-five years the bonds have to run more than $3,000 is to indulge in speculation and prophecy. Many things, all problematical, may occur to make the assessment for the next year and for future years wholly different. The valuation of the property of others may be raised. The valuation of the property of plaintiff may be lowered. Both may occur. Only prophetic ken of a rare order could forecast what will ensue. Jurisdiction is based on actuality, not prophecy, the pressure of a grievance immediately felt and presently measurable in money of the jurisdictional amount. Speculative anticipation that conditions, from which present ills, not now sufficient in amount to give jurisdiction, flow, may in time aggregate the necessary amount, will not support jurisdiction.

*Id.* at 980 (emphasis added).

## G. Attorney's Fees and Costs Allowed Under 28 U.S.C. §1447(c) For Improvident Removal.

In a courts' discretion, plaintiffs are entitled to attorney's fees and costs if the defendants lack an objectively reasonable basis to support their removal action. *Martin v. Franklin Capital Corp.,* 546 U.S. 132 (2005); *Banknight v. Monroe County, Florida,* 446 F.3d 1327, 1329-32 (11th Cir. 2006). Here, defendants cannot establish an exception to the "well-pleaded complaint rule" so that it provides a reasonable basis to support a claim of federal question jurisdiction.

Defendants claim that plaintiffs' available remedies under Florida law are preempted by OPA and OCSLA is wholly without reasonable or objective legal support. In claiming that the court has subject matter jurisdiction under CAFA, defendants have completely ignored the single thrust of plaintiffs' request for declaratory relief under Florida law. Instead, the defendants cite and rely on imaginary claims for damages which are ascribed to plaintiffs without any factual support whatsoever. Under such circumstances, any claim by defendants that they have an objectively reasonable basis to support their removal action is misplaced.

## CONCLUSION

Defendants' token representation that OPA and/or OSCLA operate to preempt the liability features of Chapter 376, Laws of Florida, should be summarily rejected. As to their contention that the $5 million "matter in controversy" threshold is satisfied by the request for this declaratory judgment, the defendants cannot meet their burden of demonstrating by the preponderance of the evidence that finitely measured benefits in monetary terms, viewed from the Plaintiffs' perspective, will flow immediately from declaratory adjudication. Any claim for monetary damages must await the future actions by taxing authorities, the course and consequences of which are wholly speculative.

18

Defendants must know full well that removal, followed by referral to a multi-district litigation (MDL) forum, will significantly defer resolution of the critical issues presented here.[3] The defendants have failed to demonstrate that this declaratory judgment proceeding involves a controversy bearing financial consequences immediately and presently quantifiable or measureable in terms of monetary damages.  They have failed to meet their significant burdens under CAFA.  The removal sought by defendants should be denied.

/s/ Talbot D'Alemberte
Talbot D'Alemberte, Esq.
Patsy Palmer, Esq.
D'Alemberte & Palmer, PLLC
P.O. Box 10029
Tallahassee, Florida 32302
850-325-6292

William C. Owen, Esq.
William C. Owen, LLC
241 Pinewood Drive
Tallahassee, Florida 32303
Fla. Bar No. 105417
(850) 513-0600
(850) 877-2809 fax

Douglas S. Lyons, Esq.
Fla. Bar No. 128277
Marsha L. Lyons, Esq.
Fla. Bar No. 128281
Lyons & Farrar, P.A.
325 North Calhoun Street
Tallahassee, Florida 32301
(850) 222-8811
(850) 222-5583 fax

P. Tim Howard, Esq.

---

[3] Recent pleadings before this court reference that some 200 class actions have been filed regarding the BP oil spill incident and to date some 139 matters have been referred to the MDL forum in the Eastern District of Louisiana for inclusion in MDL 2179.  (Doc. 16, p.p. 2, 3).

Howard & Associates, P.A.
1471 Timberlane Road
Suite 115
Tallahassee, Florida 32312
(850) 298-4455
(850) 216-2537 fax

James G. Feiber, Jr., Esq.
Salter Feiber Murphy Hutson
 & Menet P.A.
P. O. Box 357399
Gainesville, Florida 32635
(352) 37608201
(352) 376-7996 Fax

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29th day of November 2010, I electronically

transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System,

for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/ Talbot D'Alemberte
Talbot D'Alemberte, Esq.

20