UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SCOTT CARSWELL, JULIE CARSWELL,
KENT McCOY, JANINE McCOY, and ROBERT
HOWARD, individually and as representatives of
similarly situated persons,

Plaintiffs,

CASE NO.:4:10-cv-00486- SPM-WCS

vs.

LISA ECHEVERRI, as Executive Director of the
Florida Department of Revenue, acting in her
official capacity, and BP, plc; BP PRODUCTS
NORTH AMERICA, INC.; BP AMERICA,
INC.; BP EXPLORATION AND
PRODUCTION, INC.; BP AMERICAN
PRODUCTION COMPANY; TRANSOCEAN,
LTD; TRANSOCEAN OFFSHORE
DEEPWATER DRILLING, INC.;
TRANSOCEAN DEEPWATER,
INC.;TRANSOCEAN HOLDINGS, LLC;
TRITON ASSET LEASING GMBH;
HALLIBURTON ENERGY SERVICES, INC.;
CAMERON INTERNATIONAL
CORPORATION f/k/a COOPER CAMERON
CORPORATION; ANDARKO PETROLEUM
CORPORATION; ANDARKO E&P
COMPANY, L.P.; MOEX OFFSHORE 2007,
LLC; M-I, LLC; DRIL-QUIP, INC.; MITSUI
OIL EXPLORATION; and HYUNDAI HEAVY
INDUSTRIES CO., LTD., INC.,

Defendants.

<u>Defendant Florida Department of Revenue's Motion to Dismiss and in the Alternative Remand</u>

Defendant Lisa Echeverri, as Executive Director of the Florida Department of Revenue,

acting in her official capacity (hereinafter "the Florida Department of Revenue"), by and through

her undersigned counsel, moves this Court pursuant to Federal Rule of Civil Procedure 12 and

Local Rule 7.1 of the Northern District of Florida to dismiss this case and in the alternative

remand it back to the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida.  This Court should not entertain this removal action for the following reasons:

**I.  This Court lacks jurisdiction under the principle of comity and the Tax Injunction Act to hear plaintiffs' claim.  (Pages 8-11)**

**II.   The court lacks jurisdiction to issue an injunction prohibiting the Florida Department of Revenue from acting pursuant to state law. (Pages 11-12)**

**III.   This Court should remand this case back to the state court.  (Page 12 )**

**(a) The Florida Department of Revenue has not consented to the removal. (Pages 12-13)**

**(b)  There is no Federal question presented in this case. (Pages 13-14)**

**(c) The Florida Department of Revenue is not a citizen for purposes of Federal diversity jurisdiction. (Pages 14-16)**

**(d) Removal under CAFA was improper. (Pages 16-18)**

**IV.  This Court does not have Article III jurisdiction to hear plaintiffs' claim against the Executive Director of the Florida Department of Revenue. (Pages 18-21)**

**V.   This Court lacks subject matter jurisdiction to grant mandamus relief against the Florida Department of Revenue. (Pages 21-22)**

## Background

The Florida Department of Revenue recognizes the magnitude of this man-made disaster and its negative impact on the environment and many Floridians.  The Florida Department of Revenue understands that many property owners are and have been adversely impacted by the Deepwater Horizon oil spill.  However, the Florida Department of Revenue does not believe that this lawsuit can help those property owners.

The first amended complaint asks the Court to commandeer the Florida Legislature, the Florida Court System and the Florida Department of Revenue through the use of a special master(s) and to substitute its judgment on difficult decisions surrounding the valuation of each parcel of property in Florida for ad valorem taxation purposes.  If the Court accepts the invitation to wade into this state tax law issue, the plaintiffs ask that it remain there indefinitely, monitoring and evaluating each new year to ensure that future actions of the Florida Department of Revenue are in a manner consistent with the Court's value judgments on those choices.  Such action by the Court would negate the provision of the Eleventh Amendment and 28 U.S.C. Section 1341.

Plaintiffs request that this Court assess plaintiffs' property for tax year 2011 and thereafter, reserve jurisdiction to continue to do so, and to oversee the day to day administrative functions of the Department as it relates to ad valorem taxation for all of Florida's counties affected by the oil spill.

Florida law already provides remedies that are plain, speedy and efficient for the proper consideration of the impact of disasters, such as this oil spill, on just valuations of affected real property.  Over the past few years, Florida's legislatively created property tax valuation system, which includes locally-elected property appraisers, has worked for owners of many thousands of properties impacted by disasters such as hurricanes, tornadoes, and forest fires.

Given the operation of Florida's property tax valuation system, appropriate reductions in January 1, 2011 values due to the oil spill are expected to occur in the absence of this unnecessary lawsuit.  If, after receiving their notices of proposed property taxes in August 2011, property owners believe their assessment does not adequately reflect the impact of the oil spill, they can appeal their assessments through an administrative process and/or by filing a lawsuit at that time.  This lawsuit asks the court to direct property appraisers to consider the impact of this

oil spill in just valuations of certain real property as of January 1, 2011, which by law will not be determined until August, 2011 and for following tax years. This lawsuit also asks the court to award plaintiff attorney's fees to be paid pro rata from the tax savings generated for the owners and taxpayers of certain real property. For reasons described below, this lawsuit is premature and would require affected taxpayers to pay attorney's fees for tax savings that are already provided for under Florida law.

For tax year 2011, the date of assessment is January 1, 2011, and the property taxpayers of record will receive their notices of proposed property taxes (TRIM notices) in mid-to-late August 2011. A lawsuit challenging January 1, 2011 just valuations would typically be filed after a taxpayer receives the proposed value(s) in mid-to-late August 2011. Yet, this lawsuit was filed on July 2, 2010, over one year before a lawsuit would normally be filed. This lawsuit is premature.

Section 193.011, Florida Statutes, provides for the property appraiser to consider the "present cash value" or "amount a willing purchaser would pay a willing seller," and the "location," "condition," and "income" of real property. §§ 193.011 (1) (3), (6), and (7), Fla. Stat. These factors clearly contemplate that the property appraiser will consider all relevant factors, including the oil spill's effect upon market conditions. Article VII, Section 4 mandates that all property in Florida be assessed at just value. Article VII, section 4 also mandates that the Legislature prescribe general law regulations that "shall secure a just valuation of all property for ad valorem taxation." See Chs. 192-197, Fla. Stat.

Florida's constitution has "delegated to the Legislature the responsibility for deciding the specifics of how that "just valuation" would be secured." Sunset Harbour Condominium Ass'n v. Robbins, 914 So. 2d 925, 931 (Fla. 2005) (citing Collier County v. State, 733 So. 2d 1012, 1019

(Fla. 1999) and stating "the constitution requires the Legislature to enact the general law regarding the collection of ad valorem taxes, and the Legislature has established a specific statutory scheme for the timing of the valuation and assessment.").

The statutory valuation system of real property provides for the just valuation of real property by the property appraiser; the administrative oversight by the Florida Department of Revenue; the collection of taxes by the tax collector; and the hearing of administrative and judicial challenges to assessments brought by individual taxpayers as provided for in chapters 193 and 194, Florida Statutes.

The state constitution further creates a class of public officials called property appraisers whose duty is to determine the just value of all properties located within each county in Florida. Art. VIII, § 1(d), Fla. Const.  See also Spooner v. Askew, 345 So. 2d 1055 (Fla. 1977).  The determination of that value is performed on an annual basis by the property appraiser in each of Florida's 67 counties.

Following the mandate of Article VII, Section, the Legislature enacted section 193.011, Florida Statutes, which lists eight factors the property appraiser must consider in determining just valuation.  The Florida Supreme Court has interpreted Florida's constitutional mandate and the Legislature's regulations under section 193.011, Florida Statutes.  "Under Florida's Constitution and this Court's case law the particular method of valuation and the weight to be given the factors set out in section 193.011 are left to the **discretion** of the appraiser." Florida Department of Revenue v. Howard, 916 So. 2d 640, 643 (Fla. 2005) (citation omitted) (emphasis added). Thus, the "property appraiser's determination of assessment value [is] an **exercise of administrative discretion** within the officer's field of expertise." Mazourek v. Wal-Mart Stores,

Inc., 831 So. 2d 85, 89 (Fla. 2002) (quoting Blake v. Xerox Corp., 447 So. 2d 1348, 1350 (Fla.1984) (emphasis added).

While a property appraiser must consider all eight factors listed in Section 193.011, Florida Statutes, for establishment of just value. (Straughn v. Tuck, 354 So. 2d 368 (Fla. 1978), the property appraiser may disregard any factor which is not applicable to the assessed property. Palm Beach Development and Sales Corp v. Walker, 478 So. 2d 1122 (Fla. 4th DCA 1985). Further, the determination of the weight of given to each statutory factor is left to the property appraiser's sound discretion because appraising property is an art, not a science.  Walker v. Trump, 549 So. 2d 1098, 1103 (Fla. 4th DCA 1989).

In its oversight role, the Florida Department of Revenue has general supervision of the assessment and valuation of property so that all property in the state is valued according to its just valuation.  The supervision of the Florida Department of Revenue consists primarily of aiding and assisting County officials in the assessing and collecting functions.  See, § 195.002, Fla. Stat.  The role of the Florida Department of Revenue is to help assure that the assessment of property and the administration and collection of taxes will be uniform, just, and in compliance with law and the constitution.  See, § 195.027, Fla. Stat.

The Florida Department of Revenue is responsible under the Constitution for measuring the relative levels of assessment in and among the counties and for certifying these levels of assessment to the Department of Education to be used as the basis of the disbursement of state educational funds.  See, Art. VII, § 8, Fla. Const., and § 1011.62(4)(b), Fla. Stat.  As part of this process, the Florida Department of Revenue approves the county tax rolls if the requirements of the law are met.  See, §§ 193.1142, 193.1145, and 195.096, Fla. Stat.

The plaintiffs' request that this Court substitute its discretion for that of local property appraisers and the Florida Department of Revenue, which is tasked with certain discretionary duties within the legislatively created statutory system for the valuation of real property for *ad valorem* tax purposes.

**<u>Introduction</u>**

This case is a declaratory judgment class action filed pursuant to Chapter 86, Florida Statutes, consisting of two causes of action, first, seeking an injunction prohibiting local tax appraisers and the Florida Department of Revenue and the State Court System from exercising their respective statutorily granted authority involving the valuation and assessment of real property for *ad valorem* property tax purposes in Florida, and second, a cause of action against the BP Defendants.

On or about July 12, 2010, plaintiffs commenced this class action against the Florida Department of Revenue and three other former defendants in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, under the caption of <u>Scott Carswell, et al. v. Doris B. Pendleton, et al.</u>, Case No. 20 10-CA-0232 1.  On October 8, 2010, Plaintiffs filed a first amended complaint, now under the caption of <u>Scott Carswell, et al. v. Lisa Echeverri, et al.</u>, Case No. 20 10-CA-0232 I, dropping the three former defendants, maintaining the Florida Department of Revenue, and adding the "BP defendants" because of the second cause of action.

The first amended complaint (attached as Exhibit 1 to the Notice of Removal) does not separate the two causes of action into two separate counts, but, instead, inartfully attempts to meld them into one action.  First amended complaint, paragraph 26, pages 9-10, paragraph 55, pages 25-26; "Class Definitions," paragraphs 28-31, pages 10-12; paragraphs 33-35, pages 12-

13.   See generally, First amended complaint, "Introduction," pages 3-5; "Class Action Allegations," pages 10-15.

In the second cause of action, plaintiffs, owners of coastal property in Florida, seek a judgment from the Second Judicial Circuit of Florida that the BP Defendants are legally responsible for damages relating to the BP Deep Water Horizon oil spill (oil spill) that occurred on April 20, 2010 under Chapter 376, Florida Statutes, which allegedly have resulted in a decrease in property value of Plaintiffs' coastal property.   See first amended complaint, paragraphs 40-53, pages 15-25.

In the first cause of action plaintiffs request that the Circuit Court of the Second Judicial Circuit (and now this Court as a result of the removal) establish "just value" for the plaintiffs' property as a result of the oil spill, First amended complaint, paragraph 2, page 5.  This requested relief ignores the existing procedure for such relief available under Chapter 194, Florida Statutes. First amended complaint, page 31, Wherefore clause "A."  In paragraph 60 of the first amended complaint, plaintiffs request that the Court order the Florida Department of Revenue to direct the specific criteria to be used by the county property appraisers and order the county property appraisers of the state of Florida to "determine the just valuation of affected coastal properties attributable solely to an exposure of such properties to the subject oil spill and related pollution and threatened pollution resulting therefrom."  First Amended Complaint, Wherefore Clause, paragraph G, page 33.


**I.   This Court does not have jurisdiction under the principle of comity and the Tax Injunction Act to hear plaintiffs' claim against the Executive Director of the Florida Department of Revenue.**

This Court should decline to accept jurisdiction of this case under the principle of comity

and the Tax Injunction Act.  The "Tax Injunction Act" ("TIA"), 28 U.S.C. Section 1341, provides:

> The district court <u>shall not</u> enjoin, suspend or restrain the assessment, levy or collection of any tax under the state law where a plain, speedy and efficient remedy may be had in the courts of such state.  (emphasis supplied)

This case is a declaratory judgment class action filed pursuant to Chapter 86, Florida Statutes, seeking an injunction prohibiting the Florida Department of Revenue from exercising its statutorily granted authority involving the valuation and assessment of real property for *ad valorem* property tax purposes in Florida, notwithstanding the existence of where there exists a "plain, speedy and efficient remedy may be had in the courts of such state."

Florida already provides exactly what the Supreme Court has demanded.  Under Florida law, a party has a "plain, speedy and efficient" remedy in a Florida court of law.  The Eleventh Circuit Court of Appeals specifically and expressly found that Florida's tax procedures are "plain, speedy and efficient."  <u>See</u>, <u>Fair Assessment in Real Estate Ass'n v. McNary</u>, 454 U.S. 100, 103, 105 (1981) (citing to <u>Matthews v. Rodgers</u>, 284 U.S. 521, 525 (1932); <u>Winicki v. Mallard</u>, 783 F.2d 1567, 1570 (11th Cir.), <u>cert. den.</u>, 479 U.S. 815 (1986).

The first amended complaint asks the Court to step into the shoes of the Florida Legislature and the Florida Department of Revenue and to substitute its judgment on difficult decisions surrounding the valuation of individual parcels of property in Florida for ad valorem taxation purposes.  If the Court accepts the invitation to wade into this state tax law issue, the plaintiffs ask that it remain there indefinitely, monitoring and evaluating each new year to ensure that future actions of the Florida Department of Revenue is in a manner consistent with the Court's value judgments on those choices.  Such action by the Court would negate the provision of 28 U.S.C. Section 1341.

As the United States Supreme Court stated, the TIA restricts the power of federal district courts to prevent collection or enforcement of any tax under state law.  Arkansas v. Farm Credit Services of Central Arkansas, 520 U.S. 821, 823 (1997).   The statute has its roots in equity jurisprudence, comity and the principles of federalism.  Before enactment of the TIA, equity, comity and federalism directed the federal courts to abstain from interference in state tax matters. Matthews v. Rodgers, 284 U.S. 521, 525 (1932).   In the TIA, Congress recognized the imperative need of a state to administer its own fiscal operations, Rosewell v. LaSalle National Bank, 450 U.S. 503, 522 (1981), citing Tully v. Griffin, Inc., 429 U.S. 68, 73 (1976)[1], and both confirmed and sanctioned the prior equity practice.   Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 470 (1976); Jefferson County v. Acker, 137 F.3d 1314, 1318 (11th Cir. 1998), reversed on other grounds, Jefferson County, Alabama v. Acker, 527 U.S. 423 (1999).

The TIA is a "'jurisdictional rule' and a 'broad jurisdictional barrier'" that deprives district courts of the jurisdiction to "enjoin, suspend or restrain the assessment, levy or collection of any tax under the state law where a plain, speedy and efficient remedy may be had in the courts of such state."  28 U.S.C. § 1341; see Farm Credit Services, 520 U.S., at 825, (citing Moe, 425 U.S., at 470); Jefferson County v. Acker, 137 F.3d, at 1318 ("stripping federal courts of the power to grant relief") (citation omitted).   The TIA is first and foremost a vehicle to limit drastically federal court jurisdiction to interfere with state taxes.  Farm Credit Services, 520 U.S., at 825.  See also Osceola v. Florida Department of Revenue, 893 F.2d 1231, 1232 (11th Cir.

---

[1] See also Franchise Tax Board of California v. Alcan Aluminum Limited, 493 U.S. 331, 110 S. Ct. 661 (1990).  Accord, Waldron v. Collins, 788 F.2d 736, 737 n.3, rehearing den'd, 795 F.2d 89 (11th Cir. 1986), cert. den., 479 U.S. 884 (1986).

1990) [The TIA does not confer jurisdiction, but instead limits jurisdiction which might otherwise exist].

The Act not only divests the district court of jurisdiction to issue an injunction enjoining state officials, "but also of jurisdiction <u>to take actions that 'suspend or restrain'</u> the assessment and collection of state taxes." <u>California v. Grace Brethren Church</u>, 457 U.S. 393, 408 (1982) (emphasis added).  As the Eleventh Circuit said in <u>Williams v. City of Dothan, Alabama</u>, 745 F.2d at 1406, 1411 (11th Cir. 1984), the Act bars federal court jurisdiction where "the relief <u>requested</u> by the plaintiff will 'enjoin, suspend or restrain' a state tax assessment." (emphasis added).  Declaratory judgments, interpreting state tax law questions, are also barred under the Tax Injunction Act.  <u>Franchise Tax Board of California</u>, 493 U.S. at 338; <u>California v. Grace Brethren Church</u>, 457 U.S. at 408); <u>Osceola v. Florida Department of Revenue</u>, 893 F.2d at 1233.

This litigation falls within the principles of comity and the TIA's prohibition.  This Court should not place any part of Florida's statewide property tax system into receivership and to substitute its discretion for that of the various officials tasked with certain discretionary duties within the legislatively created statutory system for the valuation of real property for ad valorem tax purposes.

## II.   The court lacks jurisdiction to entertain the plaintiffs' state law claims. They seek injunctions prohibiting the defendants from acting pursuant to state law.

The court lacks jurisdiction under the Eleventh Amendment to entertain the plaintiffs' state law claims, which seek injunctions prohibiting the defendants from acting pursuant to state law.  The Florida Department of Revenue, as a defendant, specifically claims the protection of the Eleventh Amendment.

The Eleventh Amendment bars any claim for injunctive relief based upon an alleged violation of state law or state administrative regulations, and the federal courts lack jurisdiction

to order state officials to comply with state law.  <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 100 (1984); <u>Oneida County, NY v. Oneida Indian Nation of New York</u>, 470 U.S. 226, 250-252 (1985) ("'A federal court must examine each claim in a case to see if the court's jurisdiction is barred by the Eleventh Amendment.' . . . The Eleventh Amendment bar does not vary with the merits of the claims against the state."); <u>Does 1-13 v. Bush</u>, 261 F.3d 1037, 1055 (11th Cir. 2001) ("Moreover, to the extent that the defendants were in violation of Florida's own administrative procedures act, federal courts do not have the authority to compel state actors to comply with state law."); <u>Silver v. Baggiano</u>, 804 F.2d 1211, 1213-1214 (11th Cir. 1986) (claim based on state constitution and state law barred by Eleventh Amendment).

**III.  This Court should remand this case back to the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida.**

      **(a) The Florida Department of Revenue has not consented to the removal of this case to this Court.**

      Here, it is undisputed that the Florida Department of Revenue did not, and has not, expressly consented to the BP Defendants' notice of removal to this Court.  Therefore, the removal in this case is procedurally defective, and this Court should remand this case back to the Second Judicial Circuit in and for Leon County, Florida.

      In the context of removal jurisdiction, the unanimity rule must also be strictly interpreted, <u>Russell Corp. v. Am. Home Assurance Co.</u>, 264 F.3d 1040, 1044 (11th Cir. 2001), and in order to satisfy that requirement, this Court has stated that "each defendant must join in the removal by signing the notice of removal or by explicitly stating for itself its consent on the record, either orally or (preferably) in writing, within the thirty day time period prescribed in Title 28, United States Code Section 1446(b)."  <u>White v. Bombardier Corporation</u>, 313 F Supp 2d 1295, 1299 (N.D. Fla. 2003).

Statutes authorizing the removal of actions to federal courts are to be strictly construed against removal and questions or doubts are to be resolved in favor of returning the matter to state court.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Russell Corp., 264 F.3d at 1050.  It is well settled that in order to perfect removal jurisdiction all defendants must consent to the removal of a case to federal court.  Russell Corp., supra, 264 F.3d at 1049; Bombardier Corporation, 313 F. Supp 2d at 1299.

**(b)  There is no Federal question presented in this case.**

This Court should not accept jurisdiction of this case because there is an absence of both a federal question and diversity jurisdiction.  There must either be a federal question or diversity jurisdiction in order for this Court to have subject matter jurisdiction.  28 U.S.C. §§ 1331, 1132; Laurent v. Herkert, 196 Fed. Appx. 740, 743 (11th Cir. 2006).  A federal question is present if the cause of action is one "arising under" the Constitution, laws or treaties of the United States.  28 U.S.C. §1441(b).

On the face of the first amended complaint there is no federal issue presented.  This case in the first instance mainly involves the valuation of property by local Florida county property appraisers for *ad valorem* tax purposes.  The courts look solely to the complaint, unaided by the answer or petition for removal, to see if a federal right or immunity constitutes an essential and substantial element of the plaintiff's claim.  E.g., Gully v. First Nat. Bank, 299 U.S. 109 (1936) (suit under state law for breach of contract against a bank chartered under federal law does not raise a federal question).  A plaintiff is free to ignore the federal cause of action and rely solely on a state cause of action. E.g., Garibaldi v. Lucky Food Stores, 726 F.2d 1367 (9th Cir. 1980) (wrongful termination claim based on state public policy is not preempted by the Labor Mgmt. Relations Act).

A federal question may not be inferred from an asserted defense, even where the plaintiff anticipates such a defense.   E.g., Borzello v. Sooy, 427 F.Supp. 332 (N.D. Cal. 1977) (preemption defense raises no federal question where claim against federal savings bank arose under state fiduciary duty law).

As stated in the Introduction to this motion and further set forth in the motion, the first amended complaint must be remanded under the traditional rules governing removal as there is no federal issue whatsoever presented on its face.

A decision by this Court not to accept jurisdiction of this case is also consistent with the principles of comity and abstention.   Absent some infirmity in the state judicial process, there is no constitutional basis for preferring federal courts to state courts as adjudicators of state law claims.   By contrast, federal courts are courts of limited jurisdiction.   This is especially true in the area of removal jurisdiction, which is purely statutory in nature.   Because removal infringes on the State's sovereignty, the removal statute is strictly construed, with all doubts resolved in favor of remand.   Hoyos v. Hammer Homes, Inc., 717 F.Supp. 819, 822 (S.D. Fla. 1989), citing, Rembrandt, Inc. v. Phillips Const. Co., Inc., 500 F.Supp. 766 (D.C. Ga. 1980).   The first amended complaint in this case does not present any federal question.

**(c) The Florida Department of Revenue is not a citizen for purposes of Federal diversity jurisdiction.**

The Eleventh Circuit has stated that "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly."   Univ. of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999).   Also, the "burden of establishing subject matter jurisdiction falls on the party invoking removal."   Id. at 411-12.   In this case it is without question that the Florida Department of Revenue is part of the Executive Branch of the State of Florida and, thus, is not a "citizen" for the purpose of diversity

14

jurisdiction.  The BP Defendants have failed to meet their burden that removal is justified in this case as to either the federal issue or diversity jurisdiction.

This Court should decline to accept jurisdiction due to the absence of diversity jurisdiction.  Diversity jurisdiction exists if, *inter alia*, the matter is between citizens of different States.  28 U.S.C. § 1332(a)(1); Laurent, 196 Fed. Appx. at 743.  The Florida Department of Revenue is not a citizen for purposes of diversity jurisdiction.  University of South Alabama v. American Tobacco Co., 168 F.3d 405, 412 (11th Cir. 1999).

In University of South Alabama v. American Tobacco Co., 168 F.3d 405 (11th Cir. 1999), the university initiated an action against defendants in state court.  Defendants removed the action to federal court on the basis of diversity jurisdiction.  The Alabama Attorney General filed a notice of dismissal, arguing that he was the proper plaintiff in the action.  The University then filed a motion for remand.  The district court dismissed the case, but did not reach the question of its subject matter jurisdiction.

The Eleventh Circuit disagreed, finding that the district court should have resolved the issue of subject matter jurisdiction before reaching the merits of any other issue.  As to the merits of the jurisdictional issue, the court found:

> Moreover, it is well established that a state is not a citizen of a state for the purpose of diversity jurisdiction under 28 U.S.C. § 1332.  See Moor v. Alameda County, 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed. 2d 596 (1973) (citing Postal Tele. Cable Co. v. Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894)).  A public entity or political subdivision of a state, unless simply an "arm or alter ego of the State," however, is a citizen of the state for diversity purposes.  Moor, 411 U.S. at 717-18, 93 S.Ct. at 1800 (internal citations omitted).  Therefore, if a party is deemed to be "an arm or alter ego of the State," then diversity jurisdiction must fail.
>
> *****
>
> Although the question of diversity jurisdiction is distinct from that of immunity, see Parks v. Carriere Consol. Sch. Dist., 12 F.2d 37,

38 (5th Cir. 1926), we have also held that the Eleventh Amendment immunity analysis is applicable to a determination of citizenship for the purposes of diversity jurisdiction.  See Coastal Petroleum Co. v. U.S.S. Agri-Chems., 695 F.2d 1314, 1318 (11th Cir. 1983) (holding that the analysis to determine whether a Florida Board of Trustees is a "citizen" for the purpose of diversity jurisdiction is the same analysis used to determine whether the entity could invoke Eleventh Amendment immunity); Alabama State Univ. v. Baker & Taylor, Inc., 998 F. Supp. 1313, 1316 (M.D. Ala. 1998) (applying Eleventh Amendment analysis to diversity jurisdiction and holding that ASU and Alabama A&M are "alter ego" of the state and are not state citizens for diversity purposes).

Based on this unambiguous precedent, we conclude that the University is an instrumentality of the state, not a citizen of the state of Alabama, for the purpose of diversity jurisdiction.

168 F.3d at 412.  Since the Eleventh Circuit concluded that the district court lacked subject matter jurisdiction, the case was remanded to the district court "with instructions that this cause be remanded to the state court from whence it came."  Id. at 408.  The Florida Department of Revenue requests that this cause be remanded to the state court "from whence it came."

**(d) Removal under CAFA was improper.**

**(i) The Florida Department of Revenue is the primary defendant and a state official.**

The Transocean Defendants initially removed this action under 28 U.S.C. § 1332(d)(2). First amended complaint, ¶ 3.  Section 1332(d)(2) is inapplicable, however, because the Florida Department of Revenue, is the primary defendant and a State official.   See 28 U.S.C. § 1332(d)(5).  Jurisdiction under § 1332(d)(2) "**shall not apply** to any class action in which – (A)

16

the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." Id. (emphasis added)[2].

"Primary defendant" is not defined by statute and courts have used a variety of tests to determine whether a defendant is a "primary defendant," including whether the defendant is the subject of a significant portion of the claims asserted, like the Florida Department of Revenue here. See Cooper v. R.J. Reynolds Tobacco Co., 586 F.Supp. 2d 1312, 1318 (M.D. Fla. 2008). Plaintiffs seek declaratory relief as to the just valuation of properties across Florida in multiple tax years and alleged redistribution of ad valorem taxes attributable thereto. See First amended complaint, ¶ 26.

Indeed, the action seeks to commandeer the entire property tax process and have the court order the Florida Department of Revenue to issue uniform guidelines to county property appraisers to determine just valuation. First amended complaint, at 33. The Florida Department of Revenue is the primary defendant because the action depends upon the Executive Director of the Department as "the controlling state official charged with oversight and supervision of a grant of fair and uniform relief which may be availed to Plaintiffs and the Plaintiff Class Members as a result of this proceeding." First amended complaint, ¶ 6. Jurisdiction under 28 U.S.C. § 1332(d)(2) is therefore lacking and the action should be remanded.

**(ii) There is no stated amount in controversy.**

The Transocean Defendants' derivation of an amount in controversy "from the number of plaintiffs and the nature of the claims asserted" is "impermissible speculation-evaluating" and

---

[2] The 11th Circuit has ruled that (d)(5)(B) is jurisdictional, rather than an exception to be proved by the party seeking remand, and the same should hold true for (d)(5)(A). See Lowery v. Alabama Power Co., 483 F. 3d 1184 (11th Cir. 2007).

insufficient to establish the jurisdictional amount.  Lowery v. Alabama Power Co., 483 F. 3d 1184, 1220 (11th Cir. 2007).

The action does not seek monetary damages against the Florida Department of Revenue.[3] Plaintiffs do not request, nor could they receive under Florida law, any monetary relief with respect to the Florida Department of Revenue in this case.

This action should therefore be remanded for lack of jurisdiction.

## IV.  This Court does not have Article III jurisdiction to hear plaintiffs' claim against the Executive Director of the Florida Department of Revenue.

Without a plaintiff's satisfaction and demonstration of the requirements of Article III standing, this Court has no subject matter jurisdiction to hear the merits of the plaintiffs' claim. Where this Court lacks jurisdiction, its only function is to announce that fact and dismiss the case.  Indeed, when the district court lacks subject-matter jurisdiction, it should dismiss the complaint sua sponte if necessary, pursuant to Fed.R.Civ.P. 12(h)(3) instead of deciding the merits.  See Jenkins v. Lennar Corp., 216 Fed. Appx. 920, 921 (11th Cir. 2007).

Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies.  Fla. Family Policy Council v. Freeman, 561 F.3d 1246, 1253 (11th Cir. 2009). The doctrines of "[s]tanding and ripeness present the threshold jurisdictional question of whether a court may consider the merits of a dispute" and originate from Article III's "case and controversy" requirement.  Elend v. Basham, 471 F.3d 1199, 1204-1205 (11th Cir. 2006).

Article III "limits the jurisdiction of federal courts to the consideration of 'Cases' and 'Controversies.'  In turn, the 'case or controversy' constraint imposes on federal courts a 'dual

---

[3] While Plaintiffs "may" demand further, monetary relief in the same action, it is pursuant to subsequent motion after the disputed facts and rights are determined.  § 86.011(2), Fla. Stat. Indeed, Plaintiffs seek to have the court "reserve jurisdiction" so that a class member **may** claim monetary damages after and if declaratory relief is entered in their favor.  First amended complaint, at 35-36.

limitation' known as 'justiciability,' a doctrine that … guarantees that courts consider only matters presented in an actual adversarial context."  <u>Soliman v. United States ex rel. INS</u>, 296 F.3d 1237, 1242 (11th Cir. 2002)

 In order to possess standing, three elements must be present: "(1) the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  <u>Freeman</u>, 561 F.3d at 1253 (<u>quoting</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992); <u>Pittman v. Cole</u>, 267 F.3d 1269, 1282 (11th Cir.2001)).  Plaintiffs bear the burden of proving each of these three elements.  <u>31 Foster Children v. Bush</u>, 329 F.3d 1255, 1265 (11th Cir. 2003).

 "Allegations of possible future injury do not satisfy the requirements of Art. III.  A threatened injury must be 'certainly impending' to constitute an injury in fact."  <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 158 (1990).  The purpose of the "injury-in-fact" requirement is to "reserv[e] limited judicial resources for individuals who face immediate, tangible harm absent the grant of declaratory or injunctive relief."  <u>Bowen v. First Family Fin. Servs., Inc.</u>, 233 F.3d 1331, 1340 (11th Cir. 2000).

 In its first amended complaint filed in the Second Judicial Circuit, plaintiffs' allegations against Florida Department of Revenue are both minimal and speculative.  Their first amended complaint alleges at page 6 (emphasis supplied):

  "Defendant Lisa Echeverri, is the Executive Director of the Florida
  Department of Revenue ("DOR") and is the controlling state

19

> official charged with oversight and supervision of a grant of fair
> and uniform relief which **may be availed** to Plaintiffs and the
> Plaintiff Class Members as result of this proceeding. She is named
> a party in this action in her official capacity."

Without a showing of standing, federal courts are presumed to lack jurisdiction. Casey v. Lewis, 4 F.3d 1516, 1519 (9th Cir. 1993). Indeed, "a standing determination must be made before jurisdiction is established." Mount Evans Co. v. Madigan, 14 F.3d 1444, 1450 (10th Cir. 1994). The standing requirement is not some technicality of pleading, but must be satisfied at all times, right through to judgment. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

In this action for declaratory and injunctive relief, the plaintiffs fail to meet the three requirements necessary to demonstrate standing against the Florida Department of Revenue. Standing is a mandatory jurisdictional consideration. Article III requires the plaintiffs to allege an injury in fact before a federal court may hear the case. City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983); Cone Corp. v. Florida Department of Transportation, 921 F.2d 1190, 1203 (11th Cir. 1991). Standing is a core constitutional requirement underlying this Court's ability to exercise judicial power. Wehunt v. Ledbetter, 875 F.2d 1558, 1566-1567 (11th Cir. 1989), citing Allen v. Wright, 468 U.S. 737, 750-51 (1984) ("There is a core constitutional requirement that a plaintiff allege some actual or threatened injury that is fairly traceable to the defendant and can be remedied by an order directed against the defendant."). There is no actual or threatened injury to the plaintiffs that is "fairly traceable" to the Florida Department of Revenue.

In this action for declaratory and injunctive relief, the plaintiffs have not demonstrated the three requirements for standing against the Florida Department of Revenue: plaintiffs have not demonstrated that they are likely to suffer future injury; second, plaintiffs have not demonstrated that they are likely to suffer such injury at the hands of the Florida Department of

Revenue; and third, plaintiffs have not demonstrated that the relief they seek will likely prevent such injury from occurring.

As to the first consideration, plaintiffs must present "specific, concrete facts" showing that the challenged conduct will result in a "demonstrable, particularized injury" to the plaintiff so that the plaintiff "personally w[ill] benefit in a 'tangible way'" from court action.  Id. at 1204; Saladin v. City of Milledgeville, 812 F.2d 687, 690 (11th Cir. 1987) (litigant must show that he personally suffered actual or prospective injury); McKinney v. U.S. Department of Treasury, 799 F.2d 1544, 1549 (Fed. Cir. 1986) (litigant must show that he personally suffered some actual or threatened injury as a result of defendants' putatively illegal conduct).

The rule is paramount that the plaintiffs must demonstrate standing by pleading specific concrete facts.   Standing should not be "inferred argumentatively from averments in the pleadings."   FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (citation omitted). Rather, it is the plaintiff's burden to allege the necessary factual basis to show appropriate standing.  Id.

Plaintiffs' first amended complaint demonstrates that myriad events that do not involve the Florida Department of Revenue must occur before any of the "ifs" alleged might occur. Plaintiffs' first amended complaint must be dismissed accordingly.

## V.  This Court lacks subject matter jurisdiction to grant mandamus relief against a state official.

The relief sought by the Plaintiffs is tantamount to an ill-founded mandamus action. If this Court were to accept jurisdiction of Plaintiffs' action, it will have the very real effect of restraining the assessment and collection of Florida *ad valorem* taxes.

Although federal district courts have jurisdiction to compel **federal** officials to perform duties owed to a plaintiff, see 28 U.S.C. Section 1361, they "have no jurisdiction to issue writs of

mandamus to direct **state** agencies in the performance of their duties."  See e.g., Morrison v. Florida, 2006 WL 47284, **\*1** (M.D. Fla. Jan. 6, 2006) (emphasis supplied) (dismissing for lack of jurisdiction); see also Andujar v. Crosby, 2006 WL 146205, **\*2** (M.D. Fla. Jan. 17, 2006) (the All Writs Statute, 28 U.S.C. 1651, does not create an independent basis for jurisdiction).

The plaintiffs in this case are not seeking to compel any federal official to act; rather they are seeking to prevent the Florida Department of Revenue from performing its discretionary duties relating to the valuation of real property for *ad valorem* tax purposes as mandated by the Florida legislature.  This Court should dismiss this action and remand it back to the Second Judicial Circuit because it lacks jurisdiction to compel the Florida Department of Revenue to perform any duties.  See Lawrence v. Miami-Dade County State Atty Office, 272 Fed. Appx. 781 (11th Cir. 2008 (affirming dismissal "[b]ecause the only relief Lawrence sought was a writ of mandamus compelling action from state officials, not federal officials").

WHEREFORE, this Court should dismiss this case or in the alternative remand this case back to state court.

Respectfully submitted,

BILL McCOLLUM
ATTORNEY GENERAL

/s/   Jonathan A. Glogau_____
Jonathan A. Glogau
Chief, Complex Litigation
Fla. Bar No. 371823
PL-01, The Capitol
Tallahassee, FL 32399-1050
850-414-3300, ext. 4817
850-414-9650 (fax)
jon.glogau@myfloridalegal.com

Joseph C. Mellichamp, III
Chief, Revenue Litigation Bureau
Florida Bar No. 133249

Office of the Attorney General
The Capitol,
PL-01 Tallahassee, FL 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
Joe.Mellichamp@myfloridalegal.com

Counsel for Defendant Lisa Echeverri

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2010, the foregoing document was filed with the

Clerk of Court via the CM/ECF system, causing it to be served on all counsel of record.


/s/ Jonathan A. Glogau
Attorney